which is 19-2123 United States v. Chavez. Mr. Lund, we're ready to hear your argument when you're prepared. Good morning, may it please the court. My name is Bill Lund and I represent appellant Manuel Chavez. Cars parked on private property have different rules for police to follow to presumptively require a warrant before police can search them. Counsel, these two arguments that you're just raising, those were only raised in your reply brief, weren't they? Judge, I think that they were adequately raised. My question is were they not raised only in your reply brief? That's my question. I think not. I think that on page five of the opening brief you'll find the language that the district court improperly determined that the firearm seized was in accordance with a valid inventory search. That is the argument you made in your opening brief that the district court erred in finding that the inventory search occurred before the officer spoke with Ms. Baca, but I think Judge Baldock is correct that you've now raised arguments that were not raised in your opening brief. Why should we consider those? The most I can say is that I think that they, that the opening brief covers substantially these areas. So on page six, the appellant attorney in that case argued that the district court failed to consider that Kerry Baca was in custody of the car. She argued on page seven that Deputy DeGroff made contact with Kerry Baca and got her driver's license. And on page 10, she argued that administrative search must be justified by administrative purposes of such searches. To the extent that I can elaborate on those arguments in the reply brief, I certainly have done that. Counsel, let me ask you, were you trial counsel below? No. No, I got a call to request to submit the reply brief after the appellant's opening brief attorney was appointed to be a judge on the appellate court in New Mexico. Well, I appreciate your argument and I have no problem with you going ahead and making that argument, but I can tell you I have real problems with whether or not that was raised only in your reply brief. So go ahead and make your argument. And judge, the most I can say is if you do have concerns, I certainly don't have any problems. Counsel, in my looking at it, I don't see how it was raised before, but you go ahead and make your argument. And I don't have any problem if the court feels that a sir reply by the government is appropriate in this case. I would, if the court has concerns, because I think these are very valid issues, then I have no problems with the court ordering a sir reply. Go ahead. However you want to argue, it's up to you. In this case, the car searched was on the appellant's private driveway adjacent to the home he shared with the owner of the car present in the house. Our position is that the district court committed an error of law in holding the inventory search of the car was inevitable without analyzing the different and more stringent standards required. Our position is that the inventory search in this case should never have taken place. It was not reasonable. Let me ask you this. Once the officer entered the vehicle to secure it under the community caretaker exception and saw the gun, and then Ms. Baca said, I've never seen that gun before in my life, wouldn't the community caretaker exception apply for them to take that gun into custody as a safekeeping measure? We don't think that they get to seize the gun, because they needed a warrant to get into the car under Collins versus Virginia, because the car was on the cartilage. And in order to, even if you see contraband in a house or in a car that's parked at a home or in a home, then you still need to get a warrant to get into that, because the home has... The gun was visible from outside the car. It was... Well, we don't know that. There's testimony to that effect. I understand that. But what happened is Officer Chavez, after the car has been running for probably 10 minutes in the area with numerous other officers on the scene, decides after the appellant is arrested, has been found and arrested, that he's going to go in and look in the car. Now, we don't know what he did. He does state that he didn't move the gun, but he's not able to... He doesn't see the gun until after he's turned off the car. And Officer Castaneda actually went up to the car initially, and he didn't see the gun at all. So only after Deputy Chavez went into the car was the gun even seen. And even if it was seen, I think the district court was correct in stating that it was not... It didn't establish probable cause of anything. And what you then have is the officer then going... Officer Chavez going to talk to Officer Castaneda over on the far edge of the property, telling him that he's found a gun in the car, seen a gun in the car. And then they ask... And then the Officer Castaneda, without giving the defendant his Miranda rights after he's been arrested and put in handcuffs and surrounded by numerous police officers, asking him the very appointed question designed to elicit an incriminating response, whether or not he was a felon. And so at that point, you have a situation where the knowledge that the gun might constitute a crime is derived by this tainted statement that's been made by the appellant. And then you still have a problem with the cartilage issue in that they still would require a warrant to get back into the car, even if they had probable cause. That's, again, Collins versus Virginia. And so they made no effort in this case to obtain a warrant. And as a result, they had no right to get into the car. If the car had been rolling forward towards the other officers, would Officer Chavez have the right to enter the car to put on... Turn it off and put on the emergency brake? I think he would have, but the testimony in the hearing was that the tires of the car had not moved at all. But even if it was on the cartilage? Even if it's on the cartilage, yes. I think he does have the right to get into the car, even if it's on the cartilage, if it presents a potential immediate harm. And his testimony was that the car was moving, shaking, there was a dog running around in it, unsecured, and the car was on, it was running, and that he was concerned that it might roll forward. Couldn't the district court believe that testimony? Well, first of all, I mean, here's the picture of the car. And it is sitting in divots. It's not moving. The wheels have not moved at all. This is a place where there's... The officer knew that that dog lived in that, on that cartilage where this car was parked. The car was home, the dog was home. There is no basis for Deputy Chavez to get into the car, except... The car was in gear, right? It wasn't in park. That was the testimony. The only thing is said, I believe, is that it's in drive. And so, but it's not going anywhere, hasn't gone anywhere for 10 minutes. Because Officer Castaneda arrives at the scene at 12.18. The appellant is arrested at 12.26. And then after finding this gun in the car, the officer Chavez immediately goes and talks to Officer Castaneda to tell him that there's the gun in the car. So this car has been sitting there for 8 to 10 minutes and nothing has happened. The wheels have not moved at all. What we think is that this, a proper inventory search in this situation is controlled by the law in New Mexico under 18 colon 3 colon 12.4, which requires the officers to obtain written authorization from the owner or lessee of the property before towing. And then it's also buttressed... But they weren't towing it, right? Well, what else are they doing with it to conduct an inventory search? There's no reason to conduct an inventory search when the owner of the property is right there in the house. All they need to do under the Sanders case, or for that matter, the Pappas case, is to ask some questions. Who has this car? Who has the right to deal with this car that's on private property? And they don't follow... Counsel, you just raised the issue of the Sanders case. Yes. That's my point about you're raising that for the first time because nowhere during this case was the trial court asked to now... And you have... You're absolutely right. Yeah. Okay. Go ahead. But there was certainly the argument made that the appropriate, that the judge did not follow that this was not a valid inventory search. And so I'm simply elaborating on that argument when I raise both the New Mexico statute and also the Bernardillo County provision. The judge in his ruling mentioned the ordinance 311-2, but he doesn't analyze the provision J, which states that vehicles will not be towed from private property unless needed as evidence or pursuant to a lawful court order. Those things were not done. The first step that officers have to do when they have a car that's parked on private property is to go try and figure out who has control of it, either the owner of the property or the owner of the car. And in Sanders and in Pappas, both cases from the Tenth Circuit, they provided a means to ask either the driver of the car or owner of the car if there was something that could be done with the car so that there wouldn't be a problem with it, so that there's not a need... Do we know whose firearm that was? No, I don't think so. I don't... Well, if we don't know that it's Chavez's, why does he get to argue about the firearm being seized? Because he was driving the car and it was in the car. And so he does have a standing right based on his having been permissioned to... contest the firearm that's found inside the car. Well, that would be for a search. But was there a search here? The firearm was in plain view. Yes, there's a search because it goes back to the issue of plain view. Not only is the judge right, the district court judge right, that the the idea that the firearm, seeing a firearm in the car does not necessarily indicate that there's that it's contraband. You only get there based on what the improper statement that's been procured from the appellant. But then beyond that, because it's on curtilage, you have to have a warrant to get to it. I'd like to reserve the remainder of my time, please. Thank you. May it please the court. Dustin Segovia for the United States. Your Honors, the district court appropriately declined to impose the heavy societal cost of suppressing from evidence a by the defendant who is a felon. And there are four different ways that this court can and should affirm that decision. First, the district court did not commit clear error in finding the search of the vehicle and the retrieval of the firearm was done before Kerry Baca arrived on scene and was verified as the registered owner, and that it was therefore justified under the inventory search exception. I don't understand why you're calling it a search. We're not talking about drugs that were found in the trunk or something. We're talking about a firearm that was in plain view. That's that's correct. They certainly can view the firearm from outside the vehicle and that wouldn't constitute a search. But actually opening up, even if they view the firearm through the window, you have a right to have a firearm in your car. There's no question they see the firearm. Really, the question is whether they have a reason to believe that it's contraband. And that really goes to the probable cause automobile exception argument. And so, you know, and by the automobile exception, do you mean that when you arrest someone, you get to search their automobile? No, Your Honor. I mean that, you know, if officers have probable cause to believe that a vehicle contains contraband, they're permitted to search that without a warrant. It's an exception to the warrant requirement. What was the probable cause when either you opened it up to prevent it from rolling or you saw through the window that there's a gun there? What is the probable cause that that gun is contraband? So nobody knew that Mr. Chavez was a felon when they looked through the window, did they? Well, Deputy Castaneda did know that Chavez was a felon because he had communicated that to him. After they saw the gun, they went and asked him if he was a felon when he was not Miranda. He had not been given his Miranda warning, correct? That's correct, Your Honor. Okay. Isn't that a problem? No, it's not, Your Honor. And the reason that it's not is because of this court's decision in Phillips. So, you know, jumping to whether- you've got a problem here because in New Mexico, you have an open carry law. And just because I've got a gun laying on my seat or in the floorboard or whatever it is, and you don't know that I'm a convicted felon, you don't have probable cause to search my vehicle. You think I'm wrong there in New Mexico? No, Your Honor. It's just that the facts are different. So, Deputy- from what my reading of the record and the briefs were that you saw the gun in plain sight or when he opened the door to put it in park, that's when he sees a gun. That is not a violation of any law that I know of in New Mexico. Now, share with me where that makes that a law that connects him under that basis to arresting as a felon when you don't know that, that the gun was his or not. So, I think, Your Honor, clarifying the time frame would help. You know, Deputy Chavez sees the firearm when he enters the vehicle to put it in park and render it safe. You have an unrestrained dog in a vehicle. It's in drive. Officers- there's testimony that officers are 20 yards ahead. So, you know, he enters the vehicle for the sole purpose of putting it into park and sees the firearm. He reports that to Deputy Castaneda, who at the time is detaining the defendant. Are you saying when he saw the weapon that that gave him probable cause? I mean, he reports it, but he doesn't say it's a violation of any law, does he? No, he doesn't. And what Deputy Castaneda immediately turns to do is ask the defendant, okay, are you a felon? And the firearm in the vehicle- That's the only time he had not been mirandized, right? That's right, Your Honor, but under this court's opinion in Phillips, they can- Phillips is the other way around. Phillips is just like Patain or Pontain in that it was a voluntary statement that led to the discovery of physical evidence. It wasn't physical evidence that led to an unmirandarized interrogation to get a statement. The broader point of both Phillips and Patain, Your Honor, is that you can consider unmirandized statements for purposes of determining probable cause. Not involuntary ones, and the district court found this was an involuntary statement and you're pretty much stuck with that, aren't you? No, Your Honor, I don't believe so. You know, it's the review for clear error with respect to the factual findings made by the district court pertaining to my colleague, but if you got another basis of what you think you can affirm this on other than your argument as where you are right now, I'm not buying it, so I'm just giving you a heads up, but I can't speak for my other two colleagues in regards to this. Another basis? Well, there's the basis on which the district court relied upon, and that was the inventorying of the vehicle. The question with respect to the inventory of the vehicle is the timing of the search. Testimony from both Deputy Castaneda and Deputy Chavez established that the search began and the firearm was found and was obtained before Carrie Baca arrived on scene and was confirmed as a registered owner. And it's important to note that when she was confirmed as a registered owner, they did what Sanders requires and turned the vehicle over to So the testimony that they provided was subject to cross-examination and the district court credited those statements. Judge Baldock, in the Vergen-Chavadin case, you stated that credibility determinations by the district court are, quote, virtually unreviewable on appeal, close quote. That was in the context of sentencing, but both for sentencing and for motion to suppress, the district court is the finder of fact, so that's really a difference without a distinction. Well, on the inventory, if we do reach the Sanders issue, you just flat out lose, don't you? Because the sheriff's policy says vehicles will not be towed from private property unless needed as evidence or pursuant to a lawful court order, and you can't have an inventory unless you're going to tow the automobile. And it unquestionably is on private property, and the police knew that owner lived there because the neighbor said so. Well, no, respectfully, your honor, the police did not know that the owner lived there. That's an important factual distinction. Well, the neighborhood reported came out of the adjoining property and said, oh yeah, that car, the people live over there. He did. He said the people who drive that car live there. What he did not say was Carrie Baca lives at that residence, and she's the registered owner of that vehicle, and the police don't have reason to believe that. Does that matter? I mean, they knew that the people who drive that car live there. I mean, you can't then assume that it's not on private property. You at least check. Well, so this is, I think, a very, very important fact. So two things real quick. First, you have a circumstance in which an individual has fled a concededly valid traffic stop. At a high rate of speed, he very much wants to get away from law enforcement. He runs a red light. He almost hits an ambulance. He comes to stop at the residence on Knott's Landing. So that's probable cause to arrest, right? Correct. What about, I mean, how does that help you with probable cause to search the vehicle? It's with respect to the inventory of the vehicle and whether it was consistent with department policy. It's on private property. That's right. You don't have to show that it's at the owner's house. It's on private property. Well, so, your honor, if I could, if I can just, the registration says that Carrie Baca had just registered that vehicle less than a month prior, and it's registered to an address, a P.O. Box in Cuba, New Mexico. So you're saying that you can inventory and tow any automobile unless it's parked in front of the registered owner's current address on the registration? No. What I'm saying, your honor, is that if police see registration for a vehicle that comes back to an address that's 80 miles away after the person who was driving it went to great lengths to escape them, that there's a problem. If I drive to New Mexico to visit Judge Baldock and I park my car in his driveway, private property, you do a search and see I live in Salt Lake City, you can't inventory and tow the car even if you saw me run a stop sign. Well, the important distinction, I think, is that in those circumstances, it's not necessarily that the car is evidence of a crime. In the circumstances, you describe. Here, it's the case that that is the case. He fled at a high rate of speed. How is the car evidence that he fled at a high rate of speed or the contents evidence that he fled at a high rate of speed? So the car itself is actually potential evidence of perhaps a vehicle burglary or a vehicle theft, and that is because the registered owner... That's the first time right there. But I think that we kind of covered the felon in possession. We're kind of where we are on the inventory. Let me ask you this question. Are we stuck as a panel evaluating this case solely on the felon in possession, whether there was probable cause of that, or can we affirm on any basis which to say if there was probable cause of another offense? And while, for instance, concealing a firearm, because there was plenty of testimony that the defendant leaned forward and that the firearm was found in a place where leaning forward would be. Do you contend that we could affirm on that basis? And I guess I'm also asking Mr. Lunn when it's his turn. Yes, Your Honor. The court could affirm on that basis. As long as there's probable cause of any type of crime, and when they see, given the description, the circumstances the court just described, and the fact that they see the firearm there, there's probable cause to believe that there's evidence of that crime in there. The firearm being in itself and the particular location in which it was found, especially given... The crime being attempt to conceal a firearm. Yes, Your Honor. That is one way in which this through the window of the car. It could be seen, but only partially. So I believe the testimony was that... Not very good job of concealing it, if you can see it partially. Well, you know, I believe Judge Phillips just described a circumstance in which you can also have an attempt. I mean, I don't know that you have to successfully conceal the firearm in order to be convicted of attempting to conceal it. So there's certainly probable cause of that. Was that raised in the district court? It wasn't, Your Honor, but this court can affirm on any basis in the record. It's clearly said so before, especially when it comes to Fourth Amendment type cases. The other basis on which this court could affirm is what you described, Judge McHugh, which is community caretaking function. The officers have come across a vehicle where the defendant has fled. They know that there's a firearm inside of it. And when they meet and consult with the she disclaims any ownership, the registered owner of the vehicle, she disclaims any ownership of the firearm, expresses shock that it's there, had no knowledge that it was there, and there's some insinuation in the record that she may have been a felon herself. And so... What do you point? I was looking for that. What... It says suggested, insinuated. Where in the record does it tell us that she is also a felon who can't possess that firearm? It's suggested in the record through defense counsel's cross-examination of Deputy Castaneda, where he's inquiring whether he ran a records check for Miss Baca to confirm whether she was a felon. So that's where it's... The insinuation is that he was asking that question and he actually said, you know, had you discovered that and learned she was a felon, you would have reason to believe that she wasn't being honest with you about the, you know, about the firearm. So in any event though, it's not necessarily that she has to be a felon. There is a community caretaking function and a concern about leaving firearms in untrained hands that justifies their seizure of the firearm in this case. And the fact that it's on private property doesn't really distinguish that. Judge Waldock? I need to ask you this question from my very first question in regards to defense counsel as to whether or not the issues that he raised were raised for the first time in his reply brief. And I've not heard you say one word about that we should or should not consider that. So obviously it's not bothering you that there is that possibility? It certainly is with respect to two different issues. You know, with respect to standards, you know, appellant's counsel notes that it wasn't addressed at all below. Well, it wasn't raised below by defense counsel and it's their obligation, you know, their burden when they file a motion to raise all the arguments available to them. Because they didn't, that argument, now that you're seeing it for the first time on appeal in a reply brief, is waived. The second thing is with respect to the curtilage issue. There was no argument below that the officers were improperly on the property of the residence where the vehicle was found. And so that argument, too, has also been waived. I see that I'm out of time. I would ask the court to affirm the district court's decision to deny the motion to suppress. Thank you. The district court in its order noted that the plain view was not applicable. It stated that Mexico laws pertaining to firearms are some of the least restrictive. They even permit open carry of firearms loaded without a permit, even in a vehicle. But you can't conceal them, right? Well, there's nothing in the judge's statement that relates, I don't think, to concealing weapons. But in any event, I think Judge McHugh is correct. If you can supposedly see this gun, it's not concealed by looking through the window. We'd be talking about an attempt crime with a person fleeing at a great rate of speed, and his inability to get all of the firearm out of view might be understandable on probable cause. Do you think or not? I don't know what his purpose was. There could have been other reasons why he was fleeing at great speed. The district court notably stated that the furtive movements by the appellant do not cross the threshold into probable cause. And then finally, the district court did correctly note the vote versus City of Hays' opinion. Finally, the community caretaking function about trying to get a gun out of a car is parked in your own private driveway. Many people undoubtedly carry guns in their cars, and that's not a basis. The problem I have with that is, this is a situation where the owner of the car is shocked to see the gun there and wants no part of it, and maybe wants no part of it because it's illegal for her to possess it. What are they supposed to do at that point with the gun? The proper procedure for them to have done in the first place, the first step that they needed to do, was to go to the house and ask Ms. Baca what her name was, find out that she was the owner of the car, and ask her, is it okay for us to inventory this car? And they didn't do that. So they only get to this issue about, well, do you want this gun, only after they've gotten the improper statement from the appellant while he's in handcuffs and surrounded by police officers. Is there anything about the layout of the property that matters? It sounds like this is a rural, private road and one house out there in the middle of nowhere. Is that accurate or does the record show? Because to the extent that's so, there's less of a community caretaker issue, I would think. There's nothing in the record to suggest that this property is in a high crime area that would cause any concern about the fact that there might be a gun in the car. This is not the Caddy versus Dabrowski case. And in fact, that Supreme Court case explicitly, expressly stated that it doesn't apply to cars that are parked on private property at the home. All right. Do the panelists have any other questions of counsel? All right. Thank you both for your time. The hearing is now adjourned. The case is submitted and counsel is excused.